UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RONALD DERYKE,

          Plaintiff,            Case No. 1:23-cv-502

v.            Honorable Robert J. Jonker

PAM SAUNDERS et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Unknown Part(y)(ies) #1, named as "Jane Doe and/or John Doe of Wellpath." The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment equal protection claim and claim regarding the violation of the MDOC's policies. Plaintiff's Eighth Amendment claims against Defendants Saunders and Wellpath Corporation (Wellpath) remain in the case. Additionally, the

Court declines supplemental jurisdiction over Plaintiff's state law claim against Defendant Saunders, and dismisses it without prejudice.

## Discussion

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Registered Nurse Pam Saunders, Wellpath, and Defendant Unknown Part(y)(ies) #1, named as Jane Doe and/or John Doe of Wellpath. (ECF No. 1, PageID.1–2.)

Plaintiff alleges that on February 4, 2022, he approached H-Unit custody officers seeking emergency medical attention for severe pain in his lower right abdominal region. Plaintiff was told to walk over to health care, where he crouched over in pain outside the Health Care door. Plaintiff states that a mental health worker and Resident Unit Manager Fleisher (non-parties) saw him and knocked on the door for Plaintiff to alert Health Care personnel. After about ten minutes, Defendant Saunders opened the door and asked Plaintiff why he was banging on the door. Plaintiff was then admitted to Health Care and evaluated, after which he was taken to a local hospital emergency room.

At the hospital, Plaintiff received lab tests and a CT scan, which revealed a moderate amount of stool in Plaintiff's colon and a moderate atherosclerotic calcification along the abdominal aorta. Plaintiff was treated and told that if his symptoms returned, he needed to report to Health Care at the prison.

Once Plaintiff returned to the prison later that day, Defendant Saunders and non-party Physician Assistant Audrey Garnsey told him "he was being treated for constipation and given a

bottle of magcitrate." (*Id.*, PageID.5.) Throughout the day, Plaintiff's pain continued to progress until it became unbearable. At one point, the pain was so bad that Plaintiff was unable to perform basic life activities. On the morning of February 5, 2022, Plaintiff got dressed and left his cell to tell housing unit officers that he needed to go to Health Care. On the way, Plaintiff lost consciousness and fell to the floor. Other inmates helped Plaintiff to his assigned bunk.

At some point, Corrections Officer Jones (not a party) arrived and told Plaintiff to stop playing around and go to the lobby area and get on the phone. Plaintiff explained that he could not move and had just lost consciousness. Jones then brought the phone to Plaintiff so he could talk to Defendant Saunders. Plaintiff explained that he was suffering from severe abdominal pain and that it felt like something had burst inside him. Defendant Saunders stated that she would look at Plaintiff's medical records and contact the on-call provider. This occurred at approximately 11:30 a.m. Plaintiff then laid on his bunk for two hours in a fetal position in extreme pain. Around 2:00 p.m., Defendant Saunders made rounds to see if any inmates had symptoms of the coronavirus. Defendant Saunders ignored Plaintiff and told staff not to call other nurses to assist Plaintiff, despite the fact that Plaintiff was obviously in pain and other inmates in the vicinity were asking her to help him. Corrections Officer Jones told inmates to be quiet and that Defendant Saunders would examine Plaintiff when she had completed COVID-19 rounds. At one point, Defendant Saunders passed directly next to Plaintiff's cell and saw him suffering, but continued on with her COVID-19 rounds.

Once COVID-19 rounds were completed at approximately 2:30 p.m., Defendant Saunders examined Plaintiff and had inmates place him in a wheelchair and take him to Health Care. One of the inmates also placed Plaintiff in the bed in Health Care. Defendant Saunders listened to Plaintiff's abdomen for about 60 seconds, after which another nurse placed an IV in Plaintiff's arm

3

and gave him oxygen. Defendant Saunders told Plaintiff that he would be transported by ambulance to the emergency room. However, Plaintiff's trip to the hospital was further delayed when custody staff told EMS personnel that they could not leave with Plaintiff until after shift change. Plaintiff finally left the prison via ambulance at approximately 3:00 p.m.

Plaintiff was diagnosed with an infection and was kept in the hospital for four days, handcuffed to a bed and unable to shower or change clothes. On February 8, 2022, Plaintiff was returned to DRF with doctor's orders to take antibiotics for the next six days, to avoid heavy lifting, to avoid pushing or pulling the wheelchair for distances greater than twenty feet, to have a bottom bunk detail, and to avoid all strenuous activity for two weeks. Plaintiff was seen by someone named Andrea Edgar, who is not a Defendant, who told Plaintiff that she did not have to provide Plaintiff with anything. Plaintiff sent three kites before getting a response from Health Care instructing Plaintiff to follow doctor's orders, including an increase in fiber and water. Plaintiff was forced to send another kite reminding staff that he had been hospitalized with an intestinal infection.

On March 10, 2022, Plaintiff was seen by non-Defendant Audrey Garnsey, who told Plaintiff that there was nothing she could do for him. Garnsey ordered labs but forgot to examine Plaintiff. Plaintiff states that he never received any follow-up care and still has pain, as well as other symptoms associated with his initial intestinal infection.

Plaintiff alleges that all Defendants violated his rights under the Eighth Amendment. (*Id.*, PageID.12.) Plaintiff also suggests that all Defendants violated the MDOC's policies. (*See, e.g.*, *id.*, PageID.7, 11.) Additionally, Plaintiff contends that Defendant Saunders violated his right to equal protection under the Fourteenth Amendment and his rights under state law. (*Id.*) Plaintiff seeks compensatory, punitive, and nominal damages, as well as declaratory relief.

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915I(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment Claims

Plaintiff alleges that all Defendants violated his rights under the Eighth Amendment as related to his receipt of inadequate medical care. (*See* ECF No. 1, PageID.12.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d

531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

7

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

### 1. Defendant Saunders

Plaintiff alleges that Defendant Saunders knowingly failed to respond promptly to his medical emergency on February 5, 2022, causing him to suffer unnecessarily for a period of approximately three hours before she examined him. During this time, Defendant Saunders was making rounds in the unit and was aware of the fact that Plaintiff was in severe pain. At this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to

8

him, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Saunders on initial review.

### 2. Defendants Wellpath and Unknown Part(y)(ies) #1, named as "Jane Doe and/or John Doe of Wellpath"

Plaintiff appears to be naming both Wellpath and unnamed company officials, identified as "Jane Doe and/or John Doe," as Defendants. (ECF No. 1, PageID.1–2.) Plaintiff identifies Wellpath as "a private corporation stationed in Tennessee and contracted with the [MDOC] . . . to provide medical care and services to inmates." (*Id.*, PageID.2.) Plaintiff asserts that Wellpath has a policy of denying any follow-up care in order to save money, and that this resulted in the denial of adequate after care after his return from the hospital. (*See id.*, PageID.11.)

A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Wellpath—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination

to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the governmental body's officers. *Monell*, 436 U.S. at 690. A "custom" is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted).

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Wellpath, Wellpath's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Wellpath's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

In this case, Plaintiff alleges that Defendant Wellpath has a "policy, practice and custom" of "denying any follow-up care as a cost-saving measure due to profit motive." (ECF No. 1, PageID.11.) Plaintiff contends that several non-party medical providers denied him follow-up care after his second trip to the hospital. Plaintiff also contends that Defendant Saunders was following Wellpath's policy when she denied "follow-up care to Plaintiff" and "refused to act when Plaintiff[] pleaded for medical assistance." (*Id.*) At this stage of the proceedings, Plaintiff's

allegations, taken as true and in a light most favorable to Plaintiff, are sufficient to suggest that Wellpath employed a custom or policy that caused the constitutional deprivation alleged.

However, with respect to Defendant Unknown Part(y)(ies) #1, named as "Jane Doe and/or John Doe of Wellpath," Plaintiff fails to present any facts or allegations regarding this Defendant. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Additionally, any "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Furthermore, Plaintiff's claims against this Defendant falls far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For these reasons, Plaintiff's claims against Defendant Unknown Part(y)(ies) #1, named as "Jane Doe and/or John Doe of Wellpath," will be dismissed.

### B. Equal Protection Claim

Plaintiff makes a conclusory assertion that Defendant Saunders violated his equal protection rights. (*See* ECF No. 1, PageID.12.) Plaintiff provides no further explanation or facts to support this claim. The Court construes Plaintiff's complaint to raise a class-of-one equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. Of Ret. V. Murgia*, 427 U.S. 307, 312 (1976).

"[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. V. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. Of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. Of Armada*, 801

F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). In this action, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to suggest that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### C. Claim Regarding Violation of MDOC Policies

Plaintiff implies that Defendants violated the MDOC's policies. (*See, e.g.*, ECF No. 1, PageID.7, 11.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

### D. State Law Claims

Plaintiff suggests that Defendant Saunders violated Plaintiff's rights under state law. (*See* ECF No. 1, PageID.12 (alleging that Defendant Saunders owed Plaintiff a duty and that there was a "patent breach of duties").)

As discussed above, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar*, 457 U.S. at 924. Plaintiff's assertion that Defendant Saunders violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). The Court declines supplemental jurisdiction over Plaintiff's state law claim against Defendant Saunders. The claim is not well developed and will needlessly complicate litigation of the federal claims.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Unknown Part(y)(ies) #1, named as "Jane Doe and/or John Doe of Wellpath" will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment equal protection claim and claim regarding the violation of the MDOC's policies. Only Plaintiff's Eighth Amendment claims against Defendants Saunders and

14

Wellpath remain in the case. The Court declines supplemental jurisdiction over Plaintiff's state law claim.

An order consistent with this opinion will be entered.


Dated:     June 05, 2023                             /s/ Robert J. Jonker
                                                                                          Robert J. Jonker
                                                                                          United States District Judge